UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MITCHELL QUINTIN GRADY, CDCR #AS-8775,<br><br>                               Plaintiff,<br><br>    vs.<br><br>K. WYATT, J. COVARRUBIAS,<br><br>                               Defendants. | Case No.: 3:20-cv-01631-AJB-BGS<br><br>**ORDER**<br><br>**1) GRANTING MOTION TO PROCEED IN FORMA PAUPERIS (ECF No. 2);**<br><br>**AND**<br><br>**2) DISMISSING COMPLAINT FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915(e)(2)(B) AND 28 U.S.C. § 1915A(b)** |

   Plaintiff Mitchell Quintin Grady, currently incarcerated at Centinela State Prison ("Centinela") in Imperial, California, is proceeding pro se in this civil rights action pursuant to 42 U.S.C. Section 1983. (*See* ECF No. 1, Compl.)   Plaintiff alleges that two officials at Centinela violated his Eighth and Fourteenth Amendment rights in connection with his requests for medical care and in the administrative grievance process.

   Plaintiff did not prepay the $400 civil filing fee required by 28 U.S.C. Section 1914(a) at the time of filing and has instead filed a Motion to Proceed In Forma Pauperis

("IFP") pursuant to 28 U.S.C. Section 1915(a). (*See* ECF No. 2.)

## I. Motion to Proceed In Forma Pauperis

All parties instituting any civil action, suit or proceeding in a district court of the United States, except an application for writ of habeas corpus, must pay a filing fee of $400.[1] *See* 28 U.S.C. § 1914(a). The action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. Section 1915(a). *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999). However, a prisoner who is granted leave to proceed IFP remains obligated to pay the entire fee in "increments" or "installments," *Bruce v. Samuels*, 136 S. Ct. 627, 629 (2016); *Williams v. Paramo*, 775 F.3d 1182, 1185 (9th Cir. 2015), and regardless of whether his action is ultimately dismissed. *See* 28 U.S.C. § 1915(b)(1), (2); *Taylor v. Delatoore*, 281 F.3d 844, 847 (9th Cir. 2002).

Section 1915(a)(2) requires prisoners seeking leave to proceed IFP to submit a "certified copy of the trust fund account statement (or institutional equivalent) for . . . the 6-month period immediately preceding the filing of the complaint." 28 U.S.C. § 1915(a)(2); *Andrews v. King*, 398 F.3d 1113, 1119 (9th Cir. 2005). From the certified trust account statement, the Court assesses an initial payment of 20% of (a) the average monthly deposits in the account for the past six months, or (b) the average monthly balance in the account for the past six months, whichever is greater, unless the prisoner has no assets. *See* 28 U.S.C. § 1915(b)(1); 28 U.S.C. § 1915(b)(4). The institution having custody of the prisoner then collects subsequent payments, assessed at 20% of the preceding month's income, in any month in which his account exceeds $10, and forwards those

---

[1] In addition to the $350 statutory fee, civil litigants must pay an additional administrative fee of $50. *See* 28 U.S.C. § 1914(a) (Judicial Conference Schedule of Fees, District Court Misc. Fee Schedule, § 14 (eff. Oct. 1, 2019)). The additional $50 administrative fee does not apply to persons granted leave to proceed IFP. *Id.*

payments to the Court until the entire filing fee is paid.  *See* 28 U.S.C. § 1915(b)(2); *Bruce*, 136 S. Ct. at 629.

In support of his IFP Motion, Plaintiff has submitted a certified copy of his trust account statement pursuant to 28 U.S.C. Section 1915(a)(2) and S.D. Cal. Civ. L.R. 3.2. *Andrews*, 398 F.3d at 1119.  The Court has reviewed Plaintiff's trust account activity, as well as the attached prison certificate verifying his available balances.  (*See* ECF No. 3, at 1-3.)  These documents show that although he carried an average monthly balance of $16.95 and had $16.67 in average monthly deposits to his trust account for the six months preceding the filing of this action, Plaintiff had an available balance of just $0.01 at the time of filing.[2]  (*See* ECF No. 3, at 1, 3.)

Therefore, the Court **GRANTS** Plaintiff's Motion to Proceed IFP (ECF No. 2) and declines to impose a partial filing fee pursuant to 28 U.S.C. Section 1915(b)(1) because his prison certificate indicates he may currently have "no means to pay it."  *See* 28 U.S.C. § 1915(b)(4) (providing that "[i]n no event shall a prisoner be prohibited from bringing a civil action or appealing a civil action or criminal judgment for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."); *Taylor*, 281 F.3d at 850 (finding that 28 U.S.C. § 1915(b)(4) acts as a "safety-valve" preventing dismissal of a prisoner's IFP case based solely on a "failure to pay . . . due to the lack of funds available to him when payment is ordered.").  Instead, the Court directs the Secretary of the CDCR, or her designee, to collect the entire $350 balance of the filing fees required by 28 U.S.C. Section 1914 and to forward them to the Clerk of the Court pursuant to the installment payment provisions set forth in 28 U.S.C. Section1915(b)(1).

---

[2] Approximately two weeks after filing his Complaint, Plaintiff filed another trust account statement, this one reflecting the six-month period preceding September 10, 2020.  (*See* ECF No. 4.)  This submission was unnecessary, but shows that as of September 10, 2020, Plaintiff still had an available balance of just $0.01.  (*See id.* at 1.)

**II.     Sua Sponte Screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b)**

    A. <u>Standard of Review</u>

Because Plaintiff is a prisoner and is proceeding IFP, his Complaint requires a pre-answer screening pursuant to 28 U.S.C. Section 1915(e)(2) and Section 1915A(b). Under these statutes, the Court must sua sponte dismiss a prisoner's IFP complaint, or any portion of it, which is frivolous, malicious, fails to state a claim, or seeks damages from defendants who are immune. *See Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc) (discussing 28 U.S.C. Section 1915(e)(2)); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010) (discussing 28 U.S.C. Section 1915A(b)). "The purpose of [screening] is 'to ensure that the targets of frivolous or malicious suits need not bear the expense of responding.'" *Nordstrom v. Ryan*, 762 F.3d 903, 920 n.1 (9th Cir. 2014) (quoting *Wheeler v. Wexford Health Sources, Inc.,* 689 F.3d 680, 681 (7th Cir. 2012)).

"The standard for determining whether a plaintiff has failed to state a claim upon which relief can be granted under Section 1915(e)(2)(B)(ii) is the same as the Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim." *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012); *see also Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (noting that screening pursuant to Section 1915A "incorporates the familiar standard applied in the context of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)"). Rule 12(b)(6) requires a complaint "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted); *Wilhelm*, 680 F.3d at 1121.

Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* The "mere possibility of misconduct" or "unadorned,

the defendant-unlawfully-harmed me accusation[s]" fall short of meeting this plausibility standard. *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009).

### B. Plaintiff's Factual Allegations

Plaintiff's allegations focus on the failure of prison officials to timely provide Plaintiff with "foot orthoses," which he apparently needs to treat flat feet. (*See* Compl. at 3.) The orthoses are the subject of a "'high priority' permanent medical chrono," and are "very important equipment that needs to be provided on a regular basis." (*See id.*)

On April 13, 2020, Plaintiff had an appointment with a nurse, Defendant K. Wyatt, who told Plaintiff she would order new orthoses for him. (*See id.*) A month later, Plaintiff had not received the orthoses, and made another medical request. (*See id.*) On May 21, 2020, Plaintiff had another appointment with Defendant Wyatt, who told Plaintiff "that she did not put in a new 'foot orthoses' [order] . . . and she seemed to not have any recollection of . . . this important matter[.]" (*See id.*) Wyatt told Plaintiff that he was "'a young person'" and asked if he knew "'how many people have flat feet in the world?'" (*Id.*) Although Plaintiff explained that he was experiencing increased knee pain as a result of not receiving new orthoses, he did not receive them at that time. (*See id.*) Rather, Defendant Wyatt "le[d] [Plaintiff] to believe that it would take many many months to get new 'foot orthoses'" if he even got them at all." (*See id.* at 4.) Plaintiff contends that these actions constitute denial of medical care and cruel and unusual punishment in violation of his Eighth Amendment rights. (*See id.* at 3-4.)

Plaintiff also alleges that Defendants Wyatt and J. Covarrubias are liable for racial discrimination. Plaintiff contends that when he met with Defendant Wyatt on May 21, 2020, she said "in a[n] irritated tone, 'oh you're back?'" (*See id.* at 5.) In Plaintiff's view, this was a "very notice-able, negative reaction" to the fact that Plaintiff is African-American. (*See id.*) Plaintiff's contentions are less clear with respect to Defendant Covarrubias, but Plaintiff seems to allege that Covarrubias "purposely ma[de] [Plaintiff] sound completely ignorant" and like "another dumb black person" by misquoting Plaintiff in Covarrubias's written response to Plaintiff's health grievance. (*See id.*; *see*

*also id.* at 6.) Plaintiff elaborates on this contention in a claim for fabrication of evidence against Defendant Covarrubias, where he explains that during an interview as part of the grievance process, Covarrubias told Plaintiff that "K. Wyatt, RN had 'dropped the ball'" on Plaintiff's first request for orthoses, and that if he had not made another medical request he would not have received any care. (*See id.* at 6.) According to Plaintiff, Covarrubias "saw fit to confuse the language," reporting on the health care grievance response that Plaintiff said "'All I know is that [Wyatt] kept tell me that it was going to take a while before I received the insoles,'" and omitting Covarrubias's statements about Wyatt's actions. (*See id.*)

Plaintiff seeks compensatory and punitive damages and an injunction preventing Defendants from retaliation or "causing anymore [sic] harm to the well being of [Plaintiff] ever again." (*Id.* at 9.)

C. <u>Analysis</u>

To state a claim under 42 U.S.C. Section 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Naffe v. Frye*, 789 F.3d 1030, 1035-36 (9th Cir. 2015).

1. Eighth Amendment

The Eighth Amendment requires that inmates have "ready access to adequate medical care," *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982), and "deliberate indifference to serious medical needs of prisoners" violates the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown in the way in which prison physicians provide medical care.'" *Colwell v. Bannister*, 763 F.3d 1060, 1066 (9th Cir. 2014) (quoting *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988)). "A prison official acts with 'deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety.'" *Toguchi*

*v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004) (quoting *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1187 (9th Cir. 2002), *overruled on other grounds by Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1076 (9th Cir. 2016)). "Under this standard, the prison official must not only 'be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists,' but that person 'must also draw the inference.'" *Id.* (quoting *Farmer v. Brennan*, 511 U.S. 825, 837 (1994)). "Inadvertent failures to provide adequate medical care, mere negligence or medical malpractice, delays in providing care (without more), and differences of opinion over what medical treatment or course of care is proper, are all insufficient to constitute an Eighth Amendment violation." *Norvell v. Roberts*, No. 20-cv-0512 JLS (NLS), 2020 WL 4464454, at *4 (S.D. Cal. Aug. 4, 2020) (citing *Estelle*, 429 U.S. at 105-07; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985)).

Plaintiff's Eighth Amendment claims against Defendant Wyatt in Counts 1 and 2[3] must be dismissed. As currently alleged, Plaintiff's allegations do not rise to the level of deliberate indifference, and instead allege merely negligence or medical malpractice. (*See* Compl. at 3 (explaining that Defendant Wyatt "seemed to not have any recollection" of having told Plaintiff she would put in an order for new foot orthoses).) In order allege deliberate indifference, Plaintiff must include "further factual enhancement," *Iqbal*, 556 U.S. at 678, demonstrating that Defendant Wyatt "purposeful[ly] . . . fail[ed] to respond to [his] pain or possible medical need," and that "harm [was] caused by [this] indifference." *Wilhelm*, 680 F.3d at 1122 (citing *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006)). Further, although Plaintiff alleges that Wyatt insinuated that his condition was not serious because Plaintiff is "'a young person,'" and said that it would take months to receive the foot orthoses, Plaintiff does not allege that Wyatt refused to provide treatment or order the

---

[3] Although Plaintiff splits these allegations into two counts, they are subject to the same constitutional analysis under the Eighth Amendment. The right of prisoners to access medical care (the stated basis for Count 1) is derived from the Eighth Amendment's prohibition against cruel and unusual punishment (the basis for Count 2). *See Estelle*, 429 U.S. at 104.

orthoses Plaintiff needs or that she refused to provide needed treatment for a non-medical reason. (*See* Compl. at 3-4.) In the absence of such allegations or other allegations of deliberate indifference on Wyatt's part, Plaintiff's Eighth Amendment claims must be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2)(B)(ii); 28 U.S.C. § 1915A(b)(1).

### 2. Racial Discrimination

Count 3 of Plaintiff's Complaint focuses on alleged instances of racial discrimination by Defendants Wyatt and Covarrubias. Claims of racial discrimination are appropriately reviewed under the equal protection clause of the Fourteenth Amendment, which "commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). To allege a claim of racial discrimination in violation of the equal protection clause, Plaintiff must allege that Defendants "acted in a discriminatory manner and that the discrimination was intentional." *FDIC v. Henderson*, 940 F.2d 465, 471 (9th Cir. 1991) (citations omitted). "In order to state a § 1983 claim based on a violation of the equal protection clause of the Fourteenth Amendment, a plaintiff must establish that defendants acted with intentional discrimination against a class of inmates which includes plaintiff." *Parker v. Kramer*, No. CVF025117 AWIDLBP, 2005 WL 1343853, at *6 (E.D. Cal. Apr. 28, 2005) (citing *Lowe v. City of Monrovia*, 775 F.2d 998, 1010 (9th Cir. 1985); *Henderson*, 940 F.2d at 471)).

Plaintiff's racial discrimination claims fail because he has not alleged sufficient "factual content that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The actions Plaintiff alleges—Wyatt's unprofessional remark when Plaintiff returned to ask about his foot orthoses and Covarrubias's misquotation of Plaintiff in the response to his health care grievance—fall far short of alleging a plausible claim of racial discrimination. (*See* Compl. at 5.) Plaintiff does not allege any non-conclusory facts suggesting that

Defendants acted in a discriminatory manner or that Plaintiff was treated differently from any other inmate, let alone that any discrimination or difference in treatment was intentional or based on race. As a result, Plaintiff's claim of racial discrimination is dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

### 3. Fabrication of Evidence

Finally, Plaintiff alleges that Defendant Covarrubias fabricated evidence in his written response to Plaintiff's health care grievance by misquoting Plaintiff and omitting statements made by Covarrubias in an interview that was part of the grievance process.

This claim is appropriately analyzed under the Fourteenth Amendment, which provides, among other things, that "[n]o state shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. To state a claim for violation of procedural due process, Plaintiff must allege "'(1) a liberty or property interest protected by the Constitution; (2) a deprivation of the interest by the government; [and] (3) lack of process.'" *See Wright v. Riveland*, 219 F.3d 905, 913 (9th Cir. 2000) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993)). Although a prisoner is entitled to procedural due process protections in disciplinary proceedings, those protections "adhere only when the disciplinary action implicates a protected liberty interest in some 'unexpected [manner]' or imposes an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Serrano v. Francis*, 345 F.3d 1071, 1078 (9th Cir. 2003) (quoting *Sandin v. Connor*, 515 U.S. 472, 484 (1995)).

Plaintiff's allegations fall far short of stating a procedural due process claim. As an initial matter, there is no constitutional right to an effective prison grievance system. *See Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003). Even if there were such a right, however, the Court does not understand how it could have been violated on these facts. Plaintiff appears to believe that prison officials cannot paraphrase or summarize a prisoner's statements in preparing a response to a grievance, and that if they do so in a

way that the prisoner disagrees with, then that would violate the Constitution. The Court is not aware of any case holding or suggesting that such a right exists. Similarly, the fact that Covarrubias told Plaintiff in an interview that Wyatt "'dropped the ball'" does not somehow create a constitutional requirement that Covarrubias's report include that statement, or that failure to include it would rise to the level of fabrication of evidence. As a result, this claim must also be dismissed for failure to state a claim upon which relief may be granted. *See* 28 U.S.C. § 1915(e)(2); 28 U.S.C. § 1915A(b).

### III.    Conclusion and Orders

Good cause appearing, the Court:

1. **GRANTS** Plaintiff's Motion to Proceed IFP pursuant to 28 U.S.C. Section 1915(a) (ECF No. 2).

2. **DIRECTS** the Secretary of the CDCR, or her designee, to collect from the full $350 filing fee owed by collecting monthly payments from Plaintiff's account in an amount equal to twenty percent (20%) of the preceding month's income and forwarding those payments to the Clerk of the Court each time the amount in the account exceeds $10 pursuant to 28 U.S.C. Section 1915(b)(2). ALL PAYMENTS SHALL BE CLEARLY IDENTIFIED BY THE NAME AND NUMBER ASSIGNED TO THIS ACTION.

3. **DIRECTS** the Clerk of the Court to serve a copy of this Order on Kathleen Allison, Secretary, California Department of Corrections and Rehabilitation, P.O. Box 942883, Sacramento, California 94283-0001.

4. **DISMISSES** Plaintiff's Complaint for failing to state a claim upon which relief may be granted pursuant to 28 U.S.C. Section 1915(e)(2)(B)(ii) and Section 1915A(b)(1).

5. **GRANTS** Plaintiff **forty-five (45)** days leave from the date of this Order in which to file an Amended Complaint which cures all the deficiencies of pleading noted above. Plaintiff's Amended Complaint must be complete by itself without reference to his original pleading. Defendants not named and any claim not re-alleged in his Amended Complaint will be considered waived. *See* S.D. Cal. Civ. L.R. 15.1; *Hal Roach Studios,*

*Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to file an Amended Complaint within the time provided, the Court will enter a final Order dismissing this civil action based both on Plaintiff's failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. Sections 1915(e)(2)(B)(ii) and 1915A(b)(1), and his failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

**IT IS SO ORDERED.**

Dated: October 29, 2020

Hon. Anthony J. Battaglia
United States District Judge